IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-00959-PAB-MDB

BENJAMIN WEISS,

     Plaintiff,

v.

WALTER SCOTT SPENCER, et al.,

     Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendants' Motion for Summary

Judgment [Docket No. 30].  Plaintiff Benjamin Weiss filed a response.  Docket No. 31.

Defendants filed a reply.  Docket No. 32.  The Court has jurisdiction pursuant to 28

U.S.C. § 1331.

## I.    UNDISPUTED FACTS[1]

Defendant Affordable Services Corp. ("Affordable") provides plumbing, HVAC,

electrical, and sewer services for residential and commercial properties throughout

Colorado.  Docket No. 30 at 2, ¶ 1.  Defendant Colorado Water & Mold Restoration

Corporation ("Colorado Water") provides water, mold, and fire remediation, removal,

and abatement services for residential properties in Colorado Springs and the

surrounding area.  *Id.*, ¶ 2.  Affordable does not engage in new construction, plumbing,

---

[1] The following facts are undisputed unless otherwise indicated.

electrical, HVAC, or sewer work under contract with general contractors. *Id.*, ¶ 3. Colorado Water does not provide water, mold, and fire remediation, restoration, removal, and abatement services for general contractors. *Id.* Affordable plumbing, HVAC, electrical, and sewer services are recognized as retail in their respective industries and comprise more than 75 percent of Affordable's gross sales per year. *Id.*, ¶ 4. Colorado Water's water, mold, and fire remediation, restoration, removal, and abatement services are recognized as retail in their respective industries and make up more than 75 percent of Colorado Water's gross sales per year. *Id.* at 2-3, ¶ 5. Affordable and Colorado Water sell their services to the general public, *id.* at 3, ¶ 6; neither entity takes part in the manufacturing process, *id.*; and both companies furnish their services to residential homeowners. *Id.* Defendant Walter Scott Spencer[2] owns Spartan Management Group, which manages Affordable and Colorado Water. *Id.* at 9-10, ¶ 36. Defendant Spencer does not have input or final decision-making authority into hiring or firing employees, does not supervise any employees nor monitor their performance, does not control employee work schedules, was not responsible for company pay practices and did not determine plaintiff's rate of pay, and does not maintain employee records. *Id.*

Plaintiff's employment with Affordable began on April 22, 2019. *Id.* at 3, ¶ 7. Plaintiff was an excavator for Affordable and was paid hourly. *Id.* In December 2019, plaintiff became an Excavation Manager, which is a salaried position. *Id.* Beginning in or around January 2021, plaintiff worked as a Project Manager and was paid strictly

---

[2] The Court refers to KC Spencer as "Mr. Spencer" and Walter Scott Spencer as "defendant Spencer."

commissions.  *Id.*[3]  On or about September 24, 2022, plaintiff became the Water and

Mold Mitigation Manager for Colorado Water and was paid commissions.  *Id.*  In these

positions, plaintiff was on call for multiple days a month, which included several

weekends and many hours of overtime, for which he was not compensated.  Docket No.

31 at 10, ¶ 5.  Defendants were unable to locate and deliver records of plaintiff's on call

time for the months of May to July 2021, October 2021, and January 2022.  *Id.* at 11,

¶ 8.

As a Project Manager at Affordable, plaintiff's pay was comprised solely of

commissions, at five to six percent of gross sales of paid projects, and his pay

fluctuated week to week.  Docket No. 30 at 3, ¶ 9.  If plaintiff's commissions while

working with Affordable fell below the minimum wage, he was paid a weekly draw

against commissions of at least $1,000.  *Id.* at 4, ¶ 10.  From January 2021 to

---

[3] Plaintiff admits defendants' assertion of undisputed fact that plaintiff was a salaried Excavation Manager beginning December 2019 until January 2021, at which point plaintiff worked as a Project Manager and was paid "strictly commissions."  *See* Docket No. 30 at 3, ¶ 7; Docket No. 31 at 9, ¶¶ 1-7.  Plaintiff also admits that he transitioned to working at Colorado Water as a Water and Mold Mitigation Manager in September 24, 2022 and was paid "solely commissions."  *See* Docket No. 30 at 3, 4, ¶¶ 7,13; Docket No. 31 at 9, ¶¶ 1-7, 10-20.  Plaintiff, however, asserts as a disputed fact that, "[d]uring June 2020 through January 2022, Plaintiff was a salaried employee for Affordable titled as an 'Excavation Manager.'"  Docket No. 31 at 10, ¶ 1 (citing Docket No. 31-1 at 3, ¶ 21).  The Court finds that plaintiff's affidavit fails to create a dispute of fact given plaintiff's admissions to defendants' assertions of undisputed fact. Defendants support their assertions of undisputed fact by citing plaintiff's deposition, wherein plaintiff confirmed that, "[i]n December of '19, I became a salaried employee as an excavation manager."  *See* Docket No. 30-7 at 8, 100:3-8.  During his deposition, plaintiff also confirmed that, "[s]tarting in January 1st, 2021, I became a project manager and was strictly on commission."  *See id.* at 8, 100:9-12.  Plaintiff confirmed that, after becoming the Water and Mold Mitigation Manager for Colorado Water on September 24, 2022, he was paid only commissions.  *See id.* at 9, 101:13-24.  The Court finds that plaintiff does not identify a genuine issue of disputed facts on these issues.

3

September 2022, when plaintiff was employed as a Project Manager, he worked between 38 to 45 hours every workweek.  *Id.*, ¶ 11.

As a Water and Mitigation Mold Manger for Colorado Water, plaintiff's duties were to create and present estimates, pull permits, generate invoices, meet with the on-site residents, communicate with the location management team, schedule and coordinate workflow, and perform some excavation and repair work.  *Id.*, ¶ 12.  In this role, Colorado Water paid plaintiff solely commissions at a rate of seven percent per job sold or, if plaintiff performed excavating work on the job sold, the rate was 15 percent of the job.  *Id.*, ¶ 13.[4]  Plaintiff worked between 38 to 45 hours per workweek when he worked at Colorado Water in 2022 and 2023.  *Id.* at 5, ¶ 14.

Affordable paid plaintiff the applicable federal and Colorado minimum wage for every workweek he worked in 2021.  *Id.*, ¶ 15.  Affordable and Colorado Water paid plaintiff the applicable minimum wage for every workweek he worked from January 1, 2022 through December 31, 2023.  *Id.*, ¶ 16.  When plaintiff worked as a Project Manager for Affordable in 2021 and 2022, his regular rate of pay exceeded one and

---

[4] Plaintiff admits that he was solely paid commissions while working at Colorado Water.  *See* Docket No 30 at 4, ¶ 13; Docket No. 31 at 9, ¶¶ 10-20.  However, in his statement of disputed facts, plaintiff asserts that, in June of 2022, he was "verbally offered a job with Colorado Water as an 'Excavation/Mitigation Manager' with salary as the basis of pay."  Docket No. 31 at 10, ¶ 2.  Plaintiff also asserts that, "[a]fter two weeks of working for Defendants at Colorado Water, Plaintiff was transitioned to a strictly commission-based employee without his consent, while at no point did his primary duties change to reflect that pay basis."  *Id.*, ¶ 3.  Plaintiff cites his affidavit in support of these assertions.  *See id.* at 10, ¶¶ 2-3 (citing Docket No. 31-1 at 3, ¶¶ 22-23).  To the extent that plaintiff is asserting that he was paid a salary while at Colorado Water, that assertion is directly contradicted by his deposition testimony, which defendants cite in their statement of fact that plaintiff does not dispute.  *See* Docket No. 30 at 4, ¶ 13 (citing Docket No. 30-7 at 9, 101:13-24; 10, 102:7-10).  The Court finds plaintiff's affidavit does not create a dispute of fact regarding plaintiff's employment status with Colorado Water for the same reasons discussed on page seven.

one-half times the federal and Colorado minimum wage for each workweek.  *Id.*, ¶¶ 17-18.  When plaintiff worked as a Water and Mitigation Mold Manager for Colorado Water from September 2022 through December 8, 2023, his regular rate of pay exceeded one and one-half times the federal and Colorado minimum wage for each workweek.  *Id.*, ¶ 19.

For the weeks ending October 13, 2023, October 20, 2023, October 27, 2023, November 17, 2023, November 24, 2023, and December 8, 2023, plaintiff did not work more than forty hours for each of those workweeks and thus is not entitled to any overtime wages under the FSLA or CWA.  *Id.* at 6, ¶ 20.  For the weeks ending November 3, 2023, November 10, 2023, and December 1, 2023, plaintiff worked more than 40 hours and was paid one and one-half times the federal and Colorado minimum wage.  *Id.*, ¶ 21.

Affordable's Employee Handbook (the "Handbook") contains provisions in the section entitled "Employee Conduct" that state Affordable may initiate disciplinary action against an employee for, among other things, unsatisfactory performance or violation of personnel policies.  *Id.*, ¶ 23.  The Handbook also contains a "No Gossip Policy," which provides that employees who have workplace issues with co-workers or supervisors should seek to resolve those issues directly with the co-worker or supervisor.  *Id.* at 7, ¶ 24.  The No Gossip Policy provides that, only if the situation cannot be resolved directly with the co-worker or supervisor, should the situation be escalated to the General Manger or Regional Team Leader.  *Id.*  The No Gossip Policy does not state that employees are prohibited from discussing their pay or concerns about their pay with other employees.  *Id.*, ¶ 25.

Sometime in or around October 2023, plaintiff spoke with Shane Dorais, General Manager of Colorado Water, and told him that he felt he should have been paid for his time attending sales meetings. *Id.*, ¶ 26. In or around mid-November 2023, Mr. Dorais notified Human Resources Director Troy Willey of plaintiff's concerns about not being paid for sales meeting time. *Id.*, ¶ 27. On or about November 17, 2023, plaintiff met with Mr. Willey to inquire about being paid for attending sales meetings. *Id.*, ¶ 28. Mr. Willey explained that it was the company's practice to not pay commissioned employees for sales meetings, but stated that he would look into the issue further. *Id.* Later that day, Mr. Willey confirmed that the company did not have to pay its commissioned employees for sales meeting time and told plaintiff the same by telephone call that evening. *Id.*, ¶ 29.

Between November 17, 2023 and November 27, 2023, Mr. Willey learned that plaintiff met with and spoke with various employees regarding his belief that he should be paid for attending sales meetings, *id.* at 8, ¶ 30, namely, that plaintiff met with KC Spencer, defendants' Vice President, spoke again with Mr. Dorais, spoke with Jaimie DeJoy, defendants' payroll clerk, spoke several times with accounts payable manager Shalena Rudnik, and spoke with several members of the Colorado Water team, including Kevin Henderson and Thomas Kirkwood. *Id.* On November 27, 2023, Mr. Willey spoke with plaintiff and told plaintiff for the fourth time that defendants were not going to pay plaintiff to attend sales meetings. *Id.*, ¶ 32. That afternoon, Mr. Willey sent plaintiff an email where he reiterated the company's position and noted that, since their November 17, 2023 meeting, plaintiff had spoken with Ms. DeJoy and Ms. Rudnick and told them that Mr. Willey was wrong in his assessment of meeting-time pay. *Id.*

Based on Mr. Willey's discussions with plaintiff, Mr. Dorais, Mr. Spencer, and several other individuals, Mr. Willey determined that he would meet with plaintiff. *Id.* at 8-9, ¶ 33. On December 8, 2023, Mr. Willey, Mr. Dorais, Mr. Toft, and Mr. Spencer met with plaintiff to discuss plaintiff's employment. *Id.* at 9, ¶ 34. During this meeting, Mr. Willey provided plaintiff a "Coaching Session and Disciplinary Action Form," which stated that plaintiff failed to follow the supervisory chain of command and violated the No Gossip Policy. *Id.* Plaintiff was terminated on December 8, 2023. *Id.* at 5, ¶ 19.[5]

## II.    LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). we

---

[5] Although the parties do not assert as an undisputed fact that plaintiff was terminated by defendants on December 8, 2023, the Court finds that this fact is undisputed. *See* Docket No. 30 at 15 ("Plaintiff's retaliation claims allege that Defendants retaliated against him when they terminated his employment on December 8, 2023."); Docket No. 31 at 1 ("Defendants abruptly terminated Plaintiff's employment on December 8, 2023, as retaliation for engaging in the protected activities of complaining about his wages just weeks prior."). The parties also stipulate to the fact that plaintiff was terminated on December 8, 2023 in the Final Pretrial Order. Docket No. 37 at 5.

cannot ignore clear, contrary video evidence in the record depicting the events as they occurred

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III.    ANALYSIS

Plaintiff brings claims for violation of the Fair Labor Standards Act ("FLSA") (Claim One); violation of the Colorado Wage Act ("CWA") (Claim Two); theft of services (Claim Three); retaliation under the FLSA (Claim Four); retaliation under the CWA and Colorado Overtime and Minimum Pay Standards Orders ("COMPS") (Claim Five); and violation and retaliation under the Colorado Pay Transparency Act pursuant to the Equal

Pay for Equal Work Act, Colo. Rev. Stat. § 8-5-101 et seq. (Claim Six). *See* Docket No.
22 at 18-25.

### 1. Sham Affidavit

In support of plaintiff's assertion of a disputed fact that plaintiff was a salaried
Excavation Manager for Affordable between June 2020 and January 2022, plaintiff cites
his affidavit. *See* Docket No. 31 at 10, ¶ 1 (citing Docket No. 31-1). Defendants, citing
plaintiff's admissions in his deposition testimony, argue that plaintiff cannot create a
disputed fact through a contradictory affidavit. *See* Docket No. 32 at 5-6. "[C]ourts will
disregard a contrary affidavit when they conclude that it constitutes an attempt to create
a *sham fact issue*." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th
Cir. 2001) (citation omitted). "To determine whether a contradicting affidavit seeks to
create a sham fact issue, we have looked to three factors: whether: '(1) the affiant was
cross-examined during his earlier testimony; (2) the affiant had access to the pertinent
evidence at the time of his earlier testimony or whether the affidavit was based on newly
discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit
attempts to explain.'" *See id.* (citation omitted). The Court finds that plaintiff's affidavit
directly contradicts his deposition testimony. Plaintiff's affidavit states that he was a
"salaried employee" as an Excavation Manager for Affordable from June 2020 through
January 2022. Docket No. 31-1 at 3, ¶ 21. By contrast, during his deposition, plaintiff
testified that he was a salaried Excavation Manager from December 2019 to January
2021, and then he was a Project Manager from January 2021 to September 2022, at
which point he was only paid commissions. *See* Docket No. 30-7 at 8-9, 100:3-101:24.
The *Ralston* factors weigh in favor of finding that plaintiff is attempting to create a sham

9

fact issue.  First, plaintiff was cross-examined and was given the opportunity to clarify his testimony.  Second, plaintiff's affidavit is based only on his own reflection, and not on newly discovered evidence.  Finally, plaintiff's prior testimony is not ambiguous, and the affidavit seeks to contradict, not clarify, plaintiff's testimony.  Therefore, the Court finds that plaintiff's affidavit is not a basis to find that there is a dispute of fact regarding plaintiff's employment status from December 2019 until January 2021.  *See Ralston*, 275 F.3d at 973.

### 2.  Claim Ones, Two, and Three – FLSA and CWA Violations and Theft of Services

The FLSA requires that employers pay employees a minimum wage and overtime compensation.  *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1).  However, the FLSA exempts certain employees from the minimum-wage and overtime provisions.  *See E.M.D. Sales, Inc. v. Carrera,* 604 U.S. 45, 48 (2025).  "Exemptions to the FLSA are to be narrowly construed; the employer must show the employees fit plainly and unmistakably within the exemption's terms."  *Lederman v. Frontier Fire Prot., Inc.*, 685 F.3d 1151, 1157 (10th Cir. 2012) (internal quotation, citation, and alteration omitted).  The employer "bears the burden of proving the exemption by a preponderance of evidence."  *See Carpenter v. DIRECTV, LLC,* No. 14-cv-02854-MJW, 2017 WL 4225797, at *6 (D. Colo. May 16, 2017) (citing *Lederman*, 685 F.3d at 1157-58).  Here, the relevant exception, the "commission sales exception," provides that:

> No employer shall be deemed to have violated subsection (a) by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.  In determining the proportion of

> compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).  In order for the commission sales exception to apply, defendants must show that plaintiff "received a regular pay rate exceeding one and one-half times the minimum wage, Defendant is a retail or service establishment, and Plaintiff[ ] received more than half of their compensation from commissions during the representative period."  *See Carpenter*, 2017 WL 4225797, at *6.  To be considered a retail or service establishment, the employer "(a) Must engage in the making of sales of goods or services; and (b) 75 percent of its sales of goods or services, or of both, must be recognized as retail in the particular industry; and (c) not over 25 percent of its sales of goods or services, or of both, may be sales for resale."  29 C.F.R. § 779.313.

Similarly, the CWA has a commission sales exception, which provides that the following employees are exempt:

> Sales employees of retail or service industries paid on a commission basis, provided that at least 50% of their total earnings in the pay period is derived from commission sales, and their regular rate of pay is at least one and one-half times the minimum wage, are exempt from Rule 4 (Overtime).  This exemption is applicable for only employees of retail or service employers who receive over 75% of their annual dollar volume from retail or service sales.

7 Colo. Code Regs § 1103-1:2.4.2 (2024) . In order for this exception to apply, defendants "must show that (1) at least 50% of [plaintiff's] earnings in a pay period were derived from commission sales ("50% Requirement"); (2) [plaintiff's] regular rate of pay was at least one and one-half times the minimum wage ("Minimum Wage Requirement"); and (3) Defendant receives more than 75% of its annual dollar volume

from retail sales." *See McAlister v. LGI Homes Corp., LLC*, No. 23-cv-03088-NYW-TPO, 2025 WL 843749, at *12 (D. Colo. Mar. 18, 2025).

Defendants contend that all three elements are met, the commission sale exception therefore applies, and thus plaintiff was exempt from the overtime provisions of the FLSA and CWA. *See* Docket No. 30 at 11-15. While plaintiff concedes that defendants are retail or service establishments and that he received a regular pay rate exceeding one and one-half times the minimum wage, he argues that, for the period of June 2020 through December 2021, he did not receive more than half his compensation from commissions. *See* Docket No. 31 at 13. During the first two weeks of this period, plaintiff contends that he was an "Excavation Manager" that defendants paid with a salary. *Id.*

Regarding plaintiff's employment as a salaried Excavation Manager from December 2019 to January 2021, *see* Docket No. 30 at 3, ¶ 7, the Court will not consider plaintiffs' claims arising out of this period because the complaint only seeks unpaid wages for the years 2021, 2022, and 2023. *See* Docket No. 22 at 18, 20, 21, ¶¶ 90, 111, 114. Turning to plaintiff's employment from January 2021 to December 8, 2023, it is undisputed that plaintiff was paid exclusively commissions during this period. Plaintiff worked as a Project Manager for Affordable and was paid strictly commissions beginning in January 2021. Docket No. 30 at 3, ¶ 7. When plaintiff transitioned to become the Water and Mold Mitigation Manager for Colorado Water on September 24, 2022, he was paid only commissions. *Id.* at 3, 4, ¶¶ 7, 13. Because plaintiff was paid only on commission from January 2021 to December 8, 2023, it is undisputed that

12

more than half of plaintiff's compensation was derived from commissions for the

relevant period.  Thus, the 50% requirement of the commission sales exception is met.

Plaintiff does not contest the remaining two elements of the commission sales

exception.  *See* Docket No. 31 at 13, 15.  Specifically, plaintiff does not contest that

defendants are retail and service employers and that plaintiff received more than one

and one-half times the minimum wage for his regular rate of pay.  *See id.*  The

undisputed facts support that these elements are met.  Affordable and Colorado Water

are "recognized as retail in their respective industries" and more than 75 percent of

their gross sales are derived from retail and sale services.  *See* Docket No. 30 at 2-3,

¶¶ 4-5.  Affordable and Colorado Water "sell their services to the general public, neither

entity takes part in the manufacturing process, and both companies furnish their

services to the end users, residential homeowners."  *Id.* at 3, ¶ 6.  During his

employment as Project Manager for Affordable and as Water and Mitigation Mold

Manager for Colorado Water, plaintiff's regular rate of pay exceeded one and one-half

times the federal and Colorado minimum wage for each workweek.  *Id.* at 5, ¶¶ 17-19.

Accordingly, the Court finds, for the period of January 2021 to December 8,

2023, plaintiff was an exempt employee under the FLSA and the CWA.  Thus, the

Court will grant defendants' motion for summary judgment on Claims One and Two.

Because plaintiff's theft of services claim is predicated on the same unpaid wages that

are the basis for plaintiff's FLSA and CWA claims, the Court will also grant defendants'

motion for summary judgment on Claim Three.  *See* Docket No. 22 at 21, ¶¶ 114-117

("By failing to pay Plaintiff all of his wages or compensation, Defendants have

committed theft of services.").

### 3. Claims Four and Five – FLSA and CWA Retaliation Claims

The FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).  The CWA provides that "[a]n employer . . . shall not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against an employee or worker who has . . . [f]iled a complaint or instituted or caused to be instituted a proceeding under this article 4 or any other law or rule related to wages, hours, or . . . [r]aised concerns in good faith about compliance with or otherwise provided information as to legal rights and remedies available under this article 4 or any other law or rule related to wages or hours to any person."  Colo. Rev. Stat. § 8-4-120(1)(a), (c).  The COMPS Order "makes clear that retaliation claims should be brought under the CWA or other statutes rather than the COMPS Order itself."  *Schlagel v. Disc. Tire Co. of Colo., Inc.*, No. 23-cv-02909-NYW-CYC, 2025 WL 316549, at *14 (D. Colo. Jan. 28, 2025).

Retaliation claims under the FLSA and CWA are considered under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *See Jones v. Peopleready Inc.,* No. 21-cv-01688-PAB-MEH, 2022 WL 2176286, at *6 (D. Colo. June 16, 2022); *Schlagel*, 2025 WL 316549, at *12 ("Like FMLA retaliation claims, the *McDonnell Douglas* framework governs CWA retaliation claims.").  Under the *McDonnel Douglas* framework, "the plaintiff bears the initial burden

14

of establishing a prima facie case of retaliation." *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006). If the plaintiff successfully establishes a prima facie case, the defendants must offer a legitimate, non-retaliatory reason for the employment action. *Id.* Defendants' burden at this stage is "one of production, not persuasion; it can involve no credibility assessment" and is "exceedingly light." *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (citations omitted). Defendants' burden is to "establish facts from which the court may infer a proper reason behind defendant[s'] decision to discharge plaintiff." *Richardson v. Topeka Metro. Transit Auth.*, 987 F. Supp. 887, 891 (D. Kan. 1997). "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual." *Metzler,* 464 F.3d at 1170.

To state a prima facie case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action. *Id.* at 1171. Defendants concede that plaintiff engaged in protected activity when he complained of defendants' pay practices and that he suffered an adverse employment action when he was terminated on December 8, 2023. *See* Docket No. 30 at 16. Defendants argue, however, that plaintiff cannot demonstrate a causal connection between his termination and protected activities. *Id.* Defendants contend that plaintiff's termination was "not connected to his complaint about his pay or meeting time pay but instead related to his poisoning the work environment at Colorado Water & Mold." *Id.* at 17.

15

It is undisputed that plaintiff brought up his complaints regarding meeting-time pay in October 2023 with Mr. Dorais. *Id.* at 7, ¶ 26. Plaintiff then discussed those complaints with Mr. Willey on November 17, 2023. *Id.*, ¶¶ 27-29. Between November 17, 2023 and November 27, 2023, plaintiff discussed the issue of meeting-time pay with other individuals employed by defendants, including his peers and members of management. *See id.* at 8, ¶ 30. Plaintiff was terminated on December 8, 2023. *See id.* at 9, ¶ 34. Eleven days passed between the most-recent protected activity and plaintiff's termination. Given the Tenth Circuit's holding that "a one and one-half month period between protected activity and adverse action may, by itself, establish causation," *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999), the Court finds that plaintiff has met his burden. Moreover, it is undisputed that plaintiff's discussions with other employees about pay issues were the basis for plaintiff's termination. *See* Docket No. 30 at 8-9, ¶¶ 33-34. While defendants argue that plaintiff was not terminated because his discussions concerned meeting-time pay, but rather because such discussions "poison[ed] the work environment," it is nevertheless undisputed that plaintiff was terminated on the basis that he had these discussions. *See id.* at 17. On these facts, a reasonable jury could conclude that there was a causal connection between plaintiff complaining of meeting-time pay and his termination.

The burden then shifts to defendants to offer a legitimate, non-retaliatory reason for plaintiff's termination. *See Metzler*, 464 F.3d at 1170. Defendants contend that their reason for terminating plaintiff was his "insubordination, refusal to follow specific and clear directives, negative attitude, violation of Defendants' no gossip policy, and his refusal to accept [the] company's conclusions about meeting time pay." Docket No. 30

at 18.  Defendants further contend that plaintiff "was terminated for fomenting dissension and creating a toxic work environment" and for "disregarding the chain of command and repeatedly telling employees that the company was wrong for not paying him to attend sales meetings."  *Id*.  Defendants have established facts "from which the court may infer a proper reason behind defendant's decision to discharge plaintiff."  *See Richardson*, 987 F. Supp. at 891.  Specifically, defendants established facts demonstrating that plaintiff disregarded the chain of command by continuing to have discussions about pay issues after Mr. Willey gave the company's final position and that plaintiff, through these discussions, also violated the No Gossip Policy.  *See Torres v. Bodycote Int'l*, 2014 WL 11878452, at *9 (D. Kan. May 23, 2014), *aff'd sub nom*. 583 F. App'x 870 (10th Cir. 2014) (unpublished) (finding that defendant set forth a legitimate, non-discriminatory reason by asserting that "Plaintiff repeatedly refused to undergo cross-training . . . without a pay raise" and "[u]nder Defendant's personnel policies, Plaintiff's refusal constituted insubordination, which was a ground for termination"); *Barnes v. Securitas Sec. Sys. USA, Inc.*, 457 F. Supp. 2d 1244, 1251 (D. Kan. 2006) (plaintiff conceding that "an act of insubordination and a violation of company policy" are legitimate, non-discriminatory reasons for termination).  Given that the Court cannot make a credibility assessment and defendants' burden is "exceedingly light" at this stage of the *McDonnell Douglas* framework, *see Carter*, 662 F.3d at 1149, the Court finds that defendants have set forth a legitimate, non-retaliatory reason for plaintiff's termination.

Turning to plaintiff's burden to show pretext, "[a] plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that

17

the employer's proffered explanation is unworthy of credence." *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1194 (10th Cir. 2016) (quoting *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1166 (10th Cir. 2007)). "Pretext can be inferred from evidence revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's explanation." *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321, 1337 (10th Cir. 2025) (citation omitted). "The critical question regarding this aspect of the *McDonnell Douglas* rubric is whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." *Id.* (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1234 (10th Cir. 2015)).

Defendants concede that plaintiff's activities were protected and do not indicate that any aspect of plaintiff's activities were not protected. *See* Docket No. 30 at 16. Plaintiff's activities included his initial discussion with Mr. Dorais in October 2023 about meeting-time pay and his follow-up with Mr. Willey in November 2023. *See id.* at 7, ¶¶ 28-29. Plaintiff was engaged in protected activity when he spoke with defendants' management team, including Mr. Spencer, Mr. Dorais, Ms. DeJoy, and Ms. Rudnik, about his complaints and when he spoke with Colorado Water team members Mr. Henderson and Mr. Kirkwood in November 2023. *See id.* at 8, ¶ 30. Defendants acknowledge that they terminated plaintiff for having these discussions. *See id.* at 18. While defendants characterize plaintiff's discussions as fomenting dissension, creating a toxic work environment, being violative of the No Gossip policy, and disregarding the chain of command, these purported reasons for terminating plaintiff are "inextricably intertwined" with plaintiff's protected activity. *See Gower v. IKON Off. Sols., Inc.*, 155 F.

18

Supp. 2d 1268, 1274 (D. Kan. 2001).  Thus, there is a "question of fact concerning

whether plaintiff's allegedly insubordinate behavior was the true reason for defendant's

actions or whether the contents of plaintiff's complaints motivated defendant's

decisions."  *See id.*  Because a "reasonable factfinder could rationally find the

employer's rationale unworthy of credence and hence infer that the employer did not act

for the asserted non-retaliatory reasons," the Court finds that plaintiff has met his

burden at this stage of the proceedings to establish pretext.  *See Dixon*, 125 F.4th at

1337 (citation omitted).  Accordingly, the Court finds that defendants are not entitled to

summary judgment on Claims Four and Five.

### 4.  Claim Six – Colorado Pay Transparency Act

Plaintiff brings his sixth claim pursuant to the Equal Pay for Equal Work Act,

Colo. Rev. Stat. § 8-5-101 et seq.  Docket No. 22 at 24-25, ¶¶ 136-147.  The complaint

alleges that defendants violated § 8-5-102(2)(d), *id.* at 25, ¶ 144, which provides that an

employer shall not:

> (d) Discharge, discipline, discriminate against, coerce, intimidate, threaten, or
> interfere with an employee or other person because the employee or person
> inquired about, disclosed, compared, or otherwise discussed the employee's
> wage rate.

Colo. Rev. Stat. § 8-5-102(2)(d).

Defendants argue that they are entitled to summary judgment on Claim Six for

the same reasons that they are entitled to summary judgment on Claims Four and Five.

*See* Docket No. 30 at 15-19.  While defendants apply the *McDonnell Douglas*

framework, *see id.*, it is unclear whether this framework applies to claims brought

pursuant to § 8-5-102(2)(d).  Nevertheless, for the reasons discussed regarding Claims

Six and Five, the Court finds that a reasonable jury could conclude that plaintiff was

terminated because he "inquired about, disclosed, compared, or otherwise discussed" his wage rate. *See* Colo. Rev. Stat. § 8-5-102(2)(d); *see also Hart v. Digitalzone Inc.*, No. 23-cv-00531-GPG-SBP, 2025 WL 1927622, at *17 (D. Colo. May 30, 2025) (denying summary judgment for defendant on plaintiff's Equal Pay for Equal Work claim because "a reasonable jury could conclude that [plaintiff's] termination would not have occurred without a desire to retaliate against him for the wage negotiations" where the purported reasons for firing plaintiff were "intertwined with the wage discussions"). Accordingly, the Court will deny summary judgment for defendants on Claim Six.[6]

### 5. *Claims Against Walter Scott Spencer*

Defendants argue that they are entitled to summary judgment on all claims against defendant Spencer because he was not plaintiff's employer. *See* Docket No. 30 at 19-20. Plaintiff does not respond to this argument. *See generally* Docket No. 31.

---

[6] Under Claim Six, the complaint cites Colo. Rev. Stat. § 8-5-102(2)(f), Docket No. 22 at 25, ¶ 144, which provides that an employer shall not:

(f) Require an employee to sign a waiver or other document that:
    (I) Prohibits the employee from disclosing wage rate information; or
    (II) Purports to deny the employee the right to disclose the employee's wage rate information.

Colo. Rev. Stat. § 8-5-102(2)(f). However, the factual allegations in support of Claim Six do not identify a "waiver or document" that plaintiff signed. Rather, the allegations focus only on defendants' alleged retaliation in response to plaintiff's meeting-time pay complaints. *See, e.g.*, Docket No. 22 at 24-25, ¶¶ 137-139, 141-142. Moreover, plaintiff does not address any claim brought pursuant to § 8-5-102(2)(f) in his response. *See generally* Docket No. 31 at 1. Accordingly, the Court will dismiss that portion of Claim Six brought pursuant to Colo. Rev. Stat. § 8-5-102(2)(f).

"The FLSA and CWA recognize the possibility that an employee may have more than one employer, and in such instances the employers may be held jointly and severally liable." *Kimes v. Alshawy*, No. 23-cv-00082-RMR-MDB, 2024 WL 2864147, at *3 (D. Colo. May 20, 2024). Furthermore, the FLSA and the CWA allow individuals to be considered "employers." *See Gomez v. Timberline Custom Builders, LLC*, No. 23-cv-01510-RMR, 2025 WL 2613741, at *3 (D. Colo. Sept. 10, 2025). To determine whether an individual can be considered an employer under the FLSA and CWA, courts consider the following factors: "whether the alleged employer: (1) has the power to hire and fire the employee; (2) supervises and controls the employee's work schedule or conditions of employment; (3) determines the rate and method of payment; and (4) maintains employment records." *See id.* An employer under the Equal Pay for Equal Work Act "means the state or any political subdivision, commission, department, institution, or school district thereof, and every other person employing a person in the state." Colo. Rev. Stat. § 8-5-101(5).[7]

---

[7] In considering whether an individual can be an employer under the Equal Pay for Equal Work Act, the Court will apply the factors applicable under the FLSA and CWA. The Equal Pay for Equal Work Act "is very similar to the federal Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)." *Prkic v. Sezzle, Inc.*, No. 24-cv-02624-PAB-NRN, 2025 WL 2918857, at *6 (D. Colo. Aug. 25, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2655933 (D. Colo. Sept. 17, 2025). In turn, because the EPA is an amendment to the FLSA, the "definition section of Chapter 8 applies equally to the FLSA and the EPA." *See Shafer v. Young Auto. Grp., Inc.*, 2018 WL 4688342, at *2 (D. Utah Sept. 28, 2018) (citing *Holliday v. WSIE 88.7 FM Radio Station*, 2005 WL 3312633, at *5 (S.D. Ill. Dec. 7, 2005) ("The EPA is part of the Fair Labor Standards Act ("FLSA"), and necessarily shares the definition of employer contained within FLSA.")).

It is undisputed that defendant Spencer does not have final input or final decision-making authority into hiring or firing employees; does not supervise any employees nor monitor their performance; does not control employee work schedules; was not responsible for company pay practices and did not determine plaintiff's rate of pay; and does not maintain employee records.  Docket No. 30 at 9-10, ¶ 36.  Thus, the Court finds that defendant Spencer was not plaintiff's employer and cannot be held liable.  Accordingly, the Court will grant summary judgment for defendant Spencer on all claims asserted against him.

## IV.    CONCLUSION

Therefore, it is

**ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 30] is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that plaintiff's claims against defendant Walter Scott Spencer are **DISMISSED with prejudice**.  It is further

**ORDERED** that Claims One, Two, and Three are **DISMISSED with prejudice**.  It is further

**ORDERED** that the portion of Claim Six brought pursuant to Colo. Rev. Stat. § 8-5-102(2)(f) is **DISMISSED with prejudice**.

DATED March 25, 2026.

BY THE COURT:

_____
PHILIP A. BRIMMER
United States District Judge

22